OPINION
Plaintiff-appellant Ralph D. Brill appeals from a summary judgment awarded in favor of defendant-appellee Tilton Corporation with respect to Brill's intentional tort claim. Brill argues that the trial court erroneously rendered summary judgment against him because he presented sufficient evidence to establish a triable issue of fact on the issue of Tilton's "intent" to commit the tort that injured him. We disagree. Accordingly, the judgment of the trial court is Affirmed.
 I
Brill is a journeyman pipe fitter. In 1994, Brill was working for Tilton, a subcontractor of Nooter Construction Co., on premises owned by BP Oil Corp. Brill, Rex Aultman, also a journeyman pipe fitter, and Lloyd Shepard, a crane operator, were ordered by their foreman, John Ullery, to remove a valve from a pipe during a maintenance shut down. Brill and Aultman removed a number of the bolts holding the valve to the pipe, and secured the valve with a harness attached to the crane so that the valve could be slid away from the pipe. Brill stepped in front of the valve to signal Shepard, who was operating his crane, to put tension on the rigging wrapped around the valve. When Shepard did so, the valve popped out from built-up pressure in the pipe, striking Brill in the chest and pinning him against a railing. Brill sustained injuries as a result of the incident.
In 1999, Brill brought an action against Tilton, Nooter, and BP Oil, alleging that Tilton had committed an intentional tort against him, and that BP Oil and Nooter had failed to provide a safe workplace for him. The claims against BP and Nooter were dismissed voluntarily. Tilton moved for summary judgment on Brill's intentional tort claim and Brill responded with a memorandum in opposition. The trial court granted Tilton's summary judgment motion, finding that Brill had failed to present sufficient evidence to create a triable issue of fact regarding the "substantial certainty" element of the test for inferring an employer's intent to commit the tort in question, set forth in cases like Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115.
Brill appeals from the summary judgment rendered against him.
 II
Brill's sole assignment of error states:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-TILTON (sic) ON PLAINTIFFS-APPELLANTS' CLAIM FOR EMPLOYER INTENTIONAL TORT.
Brill contends that he presented sufficient evidence to allow a jury to reasonably infer that Tilton intended to injure him; therefore, he argues, the trial court erred by awarding Tilton summary judgment. We disagree.
A trial court may grant a moving party summary judgment if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor.[1]
To prove "intent" for purposes of demonstrating that an employer committed an intentional tort, an employee must show: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to the dangerous process, procedure, instrumentality, or condition in the course of his employment, then harm to the employee will be a substantial certainty; and (3) that the employer, with that knowledge and under those circumstances, nonetheless required the employee to continue to perform the dangerous work.[2] The words "substantial certainty" do not actually constitute a separate element of the test, but describe the character of the knowledge the employer must be found to have possessed.[3] While an employee need not show that his employer had knowledge of the specific harm that would befall him as a result of his exposure to the dangerous process, procedure, instrumentality, or condition, the employee must show that his employer had actual knowledge of the "exact danger" that resulted in his injury.[4]
Brill asserts that Tilton knew that there was a "substantial risk" involved in removing the valve "with less than sufficient personnel"; that accidents similar to the one that injured him had occurred in the past; and that injury to one of its employees was a substantial certainty as a result of its failure to use an adequate number of workers to remove the valve. Specifically, Brill asserts that because Tilton assigned an inadequate number of employees to remove the valve, he was forced to step in front of the valve's "line of fire" to signal the crane operator to put tension on the pipe, thereby resulting in his being injured. In support of his assertions, Brill points to his affidavit and deposition, wherein he testified that he told Tilton's foreman, Ullery, that he needed additional workers to safely remove the valve, and to Ullery's deposition, wherein Ullery allegedly "admitted that he know (sic) of previous accidents which had occurred under substantially similar circumstances as the incident in question." However, a review of the evidentiary materials cited by Brill fails to establish a triable issue of fact regarding whether Tilton knew of a dangerous process, procedure, etc., and knew that injury to one of its employees was substantially certain to result from that danger, but proceeded to subject Brill to the danger anyway.
At his June 1998 deposition, Brill testified that he told Ullery that "we need some more help[,]" and that "we shouldn't do it that way. It's more safe to do it with more people." In his September 2000 deposition, Brill refined his statement on the matter as follows:
 Before we began this job, I warned Mr. Ullery that to prevent injury to myself or Rex Aultman, more workers were needed to safely remove the valve. I told Mr. Ullery that unless Tilton provided more people to help me and Rex Aultman, someone would be hurt trying to remove the valve.
In his deposition, Ullery denied that Brill told him that he and Aultman needed more workers, but for summary judgment purposes, we must look at the evidence in the light most favorable to Brill and accept his averments as true. Nevertheless, even if Brill warned Tilton's foreman, Ullery, and, therefore, Tilton itself, that he needed additional manpower to remove the valve safely, that still does not establish that Tilton had actual knowledge of the exact danger that resulted in Brill's injury, because Brill's testimony does not indicate that he ever told Ullery why additional personnel were needed to remove the valve. In particular, there was never any indication that Brill told Ullery that, without additional help, he would be required to stand in the valve's "line of fire" to signal the crane operator. By simply having its foreman being told by Brill that he and Aultman needed more workers to remove the valve safely, without its foreman being told of the exact danger posed by the lack of additional workers, Tilton could not have known that injury to Brill or Aultman was substantially certain to occur.
Brill also contends that Ullery's deposition testimony showed that previous accidents like the one that injured him had occurred "under substantially similar circumstances[.]" Although the occurrence of similar accidents in the past can be used to demonstrate an employer's knowledge of a dangerous condition and knowledge that injury to an employee exposed to that condition was substantially certain to result,[5] a review of Ullery's deposition does not support Brill's contention that the previous accidents were substantially similar to the one that injured him. At Ullery's deposition, the following exchange took place between Tilton's counsel and Ullery:
 Q Has this sort of thing, in your experience out there over the years taking out other valves, happened before where a valve popped out and hit somebody in the chest?
 A Yes. You have piping out there that gets real hot and it expands. And when it gets cold when you shut a unit down, your valves will get in there so tight you won't believe it, so we use power jacks, hydraulic jacks, anything to get them out sometimes.
 And then when it comes out, you don't know, you'd better be out of the line of fire. You try to keep (sic) yourself enough distance where something like that can happen.
Even when examined in a light most favorable to Brill, this testimony is insufficient to establish that the circumstances of the prior incidents were substantially similar to the one in which Brill was injured. There was no evidence presented regarding the specific circumstances of any of these prior accidents. In particular, there was no evidence showing that these prior accidents occurred because there were too few workers assigned to the task of removing a valve. Nor was it shown whether the employees in the previous accidents were injured as a result of their being required to walk in front of the valve's "line of fire" to perform their duties, or whether they were simply negligent in walking in front of the valve. Tilton could not have known that injury to an employee was substantially certain to occur simply as a result of its being told that it needed additional personnel to remove the valve safely, without its having been told why additional workers were necessary and what types of danger the presence of additional workers could have prevented.
Brill's sole assignment of error is overruled.
 III
Brill's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur.
[1] Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64.
[2] Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
[3] Howard v. Columbus Prod. Co. (1992), 82 Ohio App.3d 129, 135.
[4] Burns v. Presrite Corp. (1994), 97 Ohio App.3d 377, 384.
[5] See, e.g., Wehri v. Countrymark, Inc. (1992), 82 Ohio App.3d 535,539.